188 N.J. Super. 439 (1982)
457 A.2d 1188
PHILIP AMATO AND DONNA AMATO, HUSBAND AND WIFE, PLAINTIFFS-RESPONDENTS,
v.
RANDOLPH TOWNSHIP PLANNING BOARD AND RANDOLPH TOWNSHIP ZONING BOARD OF ADJUSTMENT, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 23, 1982.
Decided December 16, 1982.
*442 Before Judges MICHELS, PRESSLER and TRAUTWEIN.
Herbert M. Strulowitz argued the cause for the appellants.
Roy E. Kurnos argued the cause for the respondents.
The opinion of the court was delivered by PRESSLER, J.A.D.
This action in lieu of prerogative writs implicates heretofore unconstrued provisions of the 1975 Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., dealing with minor subdivisions and the respective jurisdictions of the planning board and the board of adjustment in respect thereof.
Plaintiffs Philip and Donna Amato own a parcel of land in Randolph Township, slightly more than two acres in size. The property is bounded on the south by Sussex Turnpike, a county road, and on the east by Weimars Lane, at present a dirt path, but shown on the township master plan as a 60-foot-wide street connecting Sussex Turnpike and a parallel county road some unspecified distance to the north. It does not appear that there has heretofore been any development at all abutting Weimars Lane, and the record does not indicate the status of title to Weimars Lane. It appears, however, to be a paper street, long since dedicated but never accepted.
*443 At present the property is used by plaintiffs for the operation of their retail nursery business, the improvements consisting of greenhouses and a barn. When plaintiffs purchased the property in 1979 they intended to reside in a single-family residence which was located in the southeast portion of the lot, that is, in the area of the intersection of Sussex Turnpike and Weimars Lane. They were, however, advised that the building was structurally unsound. Their plan was to construct a new residence in what would be the rear of the lot if its Sussex Turnpike boundary were regarded as its front line. This controversy arises out of plaintiffs' efforts to obtain the necessary municipal approvals to implement this plan. Those efforts ultimately involved the filing of a variety of applications with a variety of municipal agencies, resulting in a variety of resolutions, some contradictory.
Plaintiffs' first step was simply to apply to the building inspector for a permit to construct the residence. The permit was denied on the ground that construction of the residence would result in violation of the zoning ordinance, in there being two principal uses on the same lot. Plaintiffs accordingly applied to the board of adjustment for relief pursuant to N.J.S.A. 40:55D-70, requesting a variance from the prohibition against multiple principal uses. The board of adjustment denied the application on the ground that plaintiffs had demonstrated no hardship since the lot was subject to subdivision in full conformance with the bulk requirements of the zoning ordinance. The board did note, however, that a subdivision would result in a problem because the new rear lot would front on an unimproved street and that plaintiffs would require permission to construct a dwelling on such a lot. The board further noted in its resolution of denial that the new dwelling would constitute an expansion of the prior nonconforming use and could, therefore, not be constructed as a replacement of the prior nonconforming use. Finally, the resolution pointed out, presumably in respect of the alleged hardship of plaintiffs, that they had purchased the *444 property primarily for its commercial use. This action of the board of adjustment was not appealed from.
Plaintiffs' next step was to file a second application with the board of adjustment. The relief sought in this application was first, permission to construct the single-family residence on a lot not abutting upon an improved street; second, for approval of a minor subdivision by which the original lot would be divided into a front lot for the commercial use and a rear lot for the residential use, and third, for a variance pursuant to N.J.S.A. 40:55D-70(c) permitting plaintiffs to use a greater outdoor area for storage on the front lot than the ordinance permitted. The record is difficult to reconstruct from this point on. It appears, however, that although the planning board ordinarily has exclusive jurisdiction to entertain both major and minor subdivision applications, N.J.S.A. 40:55D-37, the application to the board of adjustment for subdivision approval was predicated by plaintiffs on N.J.S.A. 40:55D-76(b), which accords the board of adjustment the power to entertain a subdivision application if made in connection with an application for a so-called special reason variance pursuant to N.J.S.A. 40:55D-70(d). It further appears that the storage space variance was probably requested by plaintiffs for the primary purpose of conferring jurisdiction on the board of adjustment to consider the subdivision application. In any event, the board of adjustment did so, and passed a resolution granting the minor subdivision and further granting plaintiffs the right to build the new house on the rear lot, despite the unimproved condition of Weimars Lane, provided that they razed the original dwelling, that they dedicate to the township an area adequate to provide for a 25-foot turning radius at the intersection of Weimars Lane and Sussex Turnpike, and that they surface Weimars Lane with three inches of quarry-processed stone over a 20-foot width running from the intersection of Weimars Lane and Sussex Turnpike north to the rear line of the rear lot.
Shortly after the adoption of the foregoing resolution and apparently with plaintiffs' prior knowledge, it appears that the *445 board of adjustment realized that its ancillary subdivision approval power had not been properly invoked since the variance application with which the subdivision application was linked was not for a special reason or use variance under N.J.S.A. 40:55D-70(d) but rather for a hardship variance pursuant to N.J.S.A. 40:55D-70(c). Accordingly, the board of adjustment amended its original resolution by deleting the approval of the minor subdivision and turned the subdivision portion of the application over to the township's planning board.
The planning board classified the subdivision as a minor subdivision and conducted a hearing on plaintiffs' request that the subdivision be granted despite the fact that one of the two lots thereby created would not front on an improved street. Following the hearing the planning board adopted a resolution approving the subdivision subject, however, to a variety of conditions addressed to Weimars Lane. These conditions included the requirement that plaintiffs dedicate to the township a strip running from Sussex Turnpike north to the rear boundary line of the rear lot, 30 feet in width measured from the center line of Weimars Lane to their property line. Plaintiffs were also required to install on Weimars Lane "a full section of paved township road" running from Sussex Turnpike to the rear lot line "for a width of 20 feet and shall provide curbs and drainage, all of which shall be in accordance with the township ordinances and shall be approved by the township engineer." There were no proofs at the planning board hearing as to the estimated cost of this required street improvement but estimates were given ranging from $10,000 to $20,000. The cost of the residence itself, which was proposed to be built on the rear lot, was estimated at between $80,000 and $90,000.[1]
*446 Plaintiffs, regarding the township planning board's street improvement requirements to be arbitrary, unreasonable and excessive, filed this action in lieu of prerogative writs in the Law Division. The relief they essentially sought and which was granted by the Law Division was the vacation of the planning board's street improvement requirements and the substitution therefor of the board of adjustment's previously specified and far less onerous requirements. Plaintiffs urged, and the trial court evidently agreed, that the board of adjustment's requirements were within its jurisdictional competence and could not thereafter be varied by the planning board. The township planning board appeals.
For the reasons hereafter stated, we conclude that the board of adjustment did not have the power to act at all in respect of street improvement requirements under the circumstances here, and hence that its resolution prescribing those requirements was ultra vires and must be vacated. We are, however, also satisfied that while the planning board did have the exclusive jurisdictional competence to impose street improvement requirements as a condition of the minor subdivision, its resolution was inadequate and it must, therefore, reconsider plaintiffs' application for relief in accordance with the principles hereinafter set forth.
Insofar as the issue of the board of adjustment's jurisdiction is involved, we point out that the interjurisdictional dispute must be resolved in a manner consistent with the express provisions of the 1975 Municipal Land Use Law and with its aim of expediting final action on land development applications by eliminating, insofar as possible, the necessity for multiple agency action. *447 Clearly, one of the basic reforms intended to be effected by the 1975 law was the elimination of the delays and inconsistencies in development application approvals resultant from a developer's need to submit different aspects of the same development plan successively to different municipal boards and agencies.
In the light of these principles, we conclude that whichever municipal agency, whether planning board or board of adjustment, has the jurisdiction in a particular matter to entertain the subdivision application, whether major or minor, also has the exclusive jurisdiction to prescribe all of the conditions, including those relating to street improvement, upon which subdivision approval may be based. See N.J.S.A. 40:55D-38 b(2), 40:55D-39(a), 40:55D-47, and 40:55D-48(a). Conversely, if particular requirements for development are imposable upon an applicant as conditions of subdivision approval, they may only be imposed, relieved from, or varied as part of the consideration of and action on the subdivision application. They may not be independently considered by another municipal agency apart from and out of the context of the subdivision application.[2]
As we have noted, N.J.S.A. 40:55D-37 reposes the subdivision approval power in the municipal planning board. That power is, moreover, not among the general powers accorded by the statute to the board of adjustment. See N.J.S.A. 40:55D-70, delineating the scope of board of adjustment powers, and more particularly, N.J.S.A. 40:55D-70(c) expressly prohibiting the board of adjustment from granting a variance under that section where the proposed development requires planning board subdivision approval. Thus, the only statutory authority for the board of adjustment's exercise of subdivision jurisdiction is, as *448 noted, N.J.S.A. 40:55D-76(b), which authorizes that board to act on a subdivision application when submitted in conjunction with a variance application under N.J.S.A. 40:55D-70(d). Since there was no such variance application here submitted, the board of adjustment had no statutory authority to consider the subdivision application. Since it had no statutory authority to consider the subdivision application, it could also not act with respect to the street improvement condition of subdivision approval.
It appears that the confusion here regarding the board of adjustment's "street-improvement" power may be attributable to the Official Map Article of the Land Use Law, N.J.S.A. 40:55D-32 to 36, inclusive, which replaced the former Official Map and Building Permit Act, N.J.S.A. 40:55-1.30 to 1.42. N.J.S.A. 40:55D-35, like its predecessor, N.J.S.A. 40:55-1.39, prohibits the issuance of a building permit for the construction of any building or structure on a lot which does not abut a street "suitably improved to the satisfaction of the governing body" unless "such suitable improvement shall have been assured by means of a performance guarantee, in accordance with standards and specifications for road improvements approved by the governing body." N.J.S.A. 40:55D-36, like its predecessor N.J.S.A. 40:55-1.40, reposes in the board of adjustment the power to grant relief from that building permit requirement where enforcement thereof "would entail practical difficulty or unnecessary hardship, or where the circumstances of the case do not require the building or structure to be related to a street." And see N.J.S.A. 40:55D-76(a) reconfirming that power.
At first blush, the board of adjustment's exclusive power to grant relief under the Official Map Article appears to be inconsistent with the proposition that street improvement requirements are ordinarily part of the subdivision process and hence are imposable and modifiable only by the agency considering the subdivision application. We are of the view, however, that such an inconsistency was not intended by the Legislature. Clearly, if these powers existed simultaneously and concurrently in the board of adjustment and the planning board, which typically *449 exercises the subdivision power, an applicant could, as apparently happened here, obtain board of adjustment relief from the street requirements upon which subdivision approval is normally conditioned before submitting the subdivision application to the planning board. Such a result would not only produce planning chaos but would also subvert the single-agency review predicate of the Land Use Law as well as undermine the effective and intended orderly, comprehensive and integrated process of subdivision approval.
We regard the apparent inconsistency of power, however, as easily resolvable, not only by the policy of the Land Use Law but by its express provisions as well. As we have noted, the operative provision of the Official Map Article, N.J.S.A. 40:55D-35, speaks in terms of a building permit for a lot, and it is consequently only that building permit condition from which the board of adjustment is authorized by N.J.S.A. 40:55D-36 to grant relief. But the specification of a "lot" and particularly of a lot for which a building permit may be sought, necessarily implies that the lot already exists as an independent unit of land ready for improvement. The pendency of a subdivision application implies, however, that the lot for which the building permit may be sought has not yet been created and does not yet exist. The obvious consequence of these self-evident observations is that the board of adjustment's power to grant relief from street improvement requirements accorded it by the Official Map Article is limited to existing lots for which building permits have been applied and does not extend to lots yet to be created as a result of subdivision approval. Hence there was no basis here at all for the board of adjustment's exercise of jurisdiction to grant plaintiffs street-improvement relief for a not yet extant rear lot which was to be created as a result of the proposed subdivision.
Having thus concluded that the street improvement problem here involved was within the planning board's exclusive jurisdiction as part of its subdivision review, we address the manner in which that power was here exercised. As we have *450 noted, the planning board classified the subdivision here sought as a minor one. It was clearly correct in so doing. N.J.S.A. 40:55D-5 defines a minor subdivision as
... a subdivision of land for the creation of a number of lots specifically permitted by ordinance as a minor subdivision; provided that such subdivision does not involve (1) a planned development, (2) any new street or (3) the extension of any off-tract improvement the cost of which is to be prorated pursuant to section 30 of this act. (C. 40:55D-42).
Although the Randolph subdivision ordinance is regrettably not part of this record, it is undisputed that it does provide for minor subdivision and a two-lot subdivision, as the smallest possible number, is patently within whatever its numerical limitation may be. Nor is this a planned unit development. Nor is a new street involved since it is undisputed that Weimars Lane is a paper street and is shown on the master plan as a street. See Lakeland Parks, Inc. v. Washington Tp., 147 N.J. Super. 528, 535-536 (App.Div. 1977). Nor is there required an "extension of any off-tract improvement, the cost of which is to be prorated pursuant to" N.J.S.A. 40:55D-42.
The inapplicability here of N.J.S.A. 40:55D-42 is significant. That section provides in pertinent part that
The governing body may by ordinance adopt regulations requiring a developer, as a condition for approval of a subdivision or site plan, to pay his pro-rata share of the cost of providing only reasonable and necessary street improvements and water, sewerage and drainage facilities, and easements therefor, located outside the property limits of the subdivision or development but necessitated or required by construction or improvements within such subdivision or development.[3]
We are satisfied that this provision, which constitutes the legislative response to the concerns expressed by Divan Builders v. Wayne Tp. Planning Bd., 66 N.J. 582 (1975), applies only to off-tract improvements. Although the section itself does not use the term "off-tract" but rather refers to improvements "located outside the property limits," it is clear that the pro-rata *451 cost sharing scheme provided thereby in respect of street improvements does not apply to a street contiguous to the subdivision and upon which it abuts. As a textual matter, the above-quoted statutory definition of "minor subdivision" itself implicitly juxtaposes, as mutually exclusive, the applicability of N.J.S.A. 40:55D-42 on the one hand and improvements which are not off-tract on the other hand. "Off-tract" itself is defined by N.J.S.A. 40:55D-5 as
... not located on the property which is the subject of a development application nor on a contiguous portion of a street or right-of-way.
Moreover, N.J.S.A. 40:55D-39, which enumerates the discretionary contents of a subdivision ordinance, conditions any requirement for off-tract improvements on adoption of an ordinance complying with N.J.S.A. 40:55D-42. See N.J.S.A. 40:55D-39(a). The mandatory street requirement of N.J.S.A. 40:55D-38(b)(2), relating to service of the subdivision itself, has no similar reference to N.J.S.A. 40:55D-42. It is furthermore evident that pro-rata cost sharing, the predicate of N.J.S.A. 40:55D-42, has practical meaning only in the context of off-tract improvements which benefit property other than the subject of the subdivision application.
The street-improvement requirements of the planning board here, of which plaintiffs complain, relate to a street which is contiguous to and abuts the subdivision as a whole and does not extend beyond it. We are persuaded, therefore, that it does not constitute an off-tract improvement, that N.J.S.A. 40:55D-42 does not apply, and that the proposed subdivision is indeed minor.
Prior to the adoption of the 1975 Land Use Law, classification of a subdivision as minor virtually guaranteed it automatic approval and insulated it from the imposition of planning board conditions. See Lakeland Parks, Inc. v. Washington Tp., supra. Thus, under the former planning act, plaintiffs' proper procedure would have been, first, to obtain minor subdivision approval from the planning board and then to apply to the board of adjustment for street-improvement relief under the Official *452 Map Act pursuant to N.J.S.A. 40:55-1.40. That section also provided, however, that where, as here, the municipality has a master plan of streets, the board of adjustment was required to refer the application to the planning board for report and recommendation before taking action.
This cumbersome, time-consuming, multi-application, multi-agency process has been eliminated by the 1975 Land Use Law. Thus, it is expressly provided by N.J.S.A. 40:55D-47 that, on minor subdivision applications, the planning board may condition approval on terms ensuring the provision of improvements pursuant to N.J.S.A. 40:55D-38 to 40 and N.J.S.A. 40:55D-53. One of those improvements, as noted, is an improved contiguous street. If meeting such an improvement requirement is complained of by the applicant, it is the planning board which has the power to grant relief pursuant to N.J.S.A. 40:55D-51(a), which provides that
The planning board when acting upon applications for preliminary or minor subdivision approval shall have the power to grant such exceptions from the requirements for subdivision approval as may be reasonable and within the general purpose and intent of the provisions for subdivision review and approval of an ordinance adopted pursuant to this article, if the literal enforcement of one or more provisions of the ordinance is impracticable or will exact undue hardship because of peculiar conditions pertaining to the land in question.
Thus, what this controversy actually is all about is the manner in which the planning board exercised its discretionary power under that provision in considering plaintiffs' request for relief from strict enforcement of the street improvement requirement. Unfortunately, no reviewing court, either this court or the Law Division, can make a determination as to whether that power was reasonably and sustainably exercised since the resolution here complained of, which required strict enforcement, is completely silent as to the considerations set forth by N.J.S.A. 40:55D-51(a) governing disposition of an application for relief. There is not a single finding of fact or conclusion respecting the reasonableness of plaintiffs' request, the consistency thereof with the general purpose and intent of subdivision control, the impracticability of strict enforcement or the undue hardship resultant from strict enforcement.
*453 It is a fundamental principle of administrative law that the determination of an administrative agency acting in a quasi-judicial capacity is required to rest upon adequate findings of fact fairly supportable by the record. If there are no relevant findings of fact, there is also no basis for judicial review of the validity of the determination. See, e.g., Pitts v. N.J. Racing Comm'n, 185 N.J. Super. 190 (App.Div. 1982); Union Tp. v. Police & Firemen's Retire. Syst., 170 N.J. Super. 411 (App.Div. 1979); St. Vincent's Hospital v. Finley, 154 N.J. Super. 24 (App.Div. 1977); In re Union Community Bank Application, 144 N.J. Super. 39 (App.Div. 1976). We, therefore, conclude that this matter must be remanded to the planning board for reconsideration consistent with N.J.S.A. 40:55D-51 and with an opportunity for plaintiffs, should they desire, to adduce additional evidence in support of their claim that their requested relief is consistent with the statutory standards.
For purposes of that remand there are certain observations we are compelled to make. First, in respect of hardship, the actual cost of the street improvement insisted upon by the planning board should be a matter of proof, not merely one of rough estimate, since that cost, independently and relative to the cost of the proposed structure, is clearly a relevant concern. Second, with respect to dedication requirement, we point out that it is also not fairly reviewable since there were no proofs before the planning board or apparently any other municipal agency regarding the precise location of plaintiffs' property line vis-a-vis Weimars Lane and its center line. Consequently, we cannot know to what extent any dedication is necessary or to what extent a dedication would unduly impinge upon plaintiffs' property. That will also have to be established.
Furthermore, we note from the transcript of the hearing before the planning board that the board was apparently concerned with possible future development along Weimars Lane north of plaintiffs' property and the necessity, at such time, for a properly improved, curbed and drained street improvement to be made. In our view it is inappropriate for this simple two-lot *454 subdivision necessarily to be burdened by that concern. Apparently, what the planning board is trying to achieve by the full street improvement insisted upon here is the ultimate piecemeal construction of the full length of Weimars Lane as a complying street improvement. We point out, however, that that result is in any event only achievable if the development along Weimars Lane is undertaken in chronological succession by each property owner in turn from south to north. This is patently unlikely or at least a completely speculative result. It may also be seriously questioned whether the ultimate objective of a single, fully improved street can be satisfactorily achieved in patchwork fashion through piecemeal, half-street width improvements constructed by different contractors at random times. It seems to us, based on the record before us, which is admittedly incomplete, that plaintiffs are entitled to be treated on the basis of their individual circumstances, both financial and locational. If an owner of any property abutting Weimars Lane to the north of plaintiffs should in the future opt to build or subdivide, that would be an appropriate time for the entire street to be improved as a single and comprehensive project either as a general township improvement, a local improvement subject to special assessment, or pursuant to N.J.S.A. 40:55D-42. See Divan Builders, Inc. v. Wayne Tp. Planning Bd., supra. The first two of these options are, of course, at any time available to the township irrespective of the prospective submission of an application for a subdivision abutting Weimars Lane which, unlike this one, will require off-tract improvement by way of improved street extension. In any event, the planning board must take these as well as all other relevant concerns into account in its reconsideration and shall state its findings of fact and conclusions with specificity and particularity consistent with the statute and based on the record before it.
The judgment of the Law Division is reversed and we remand with instructions that the matter be remanded to the Randolph Township Planning Board for further proceedings in accordance with this opinion.
NOTES
[1] It is further noted that during the pendency of the planning board action the Morris County Planning Board reviewed the subdivision application because it involved Sussex Turnpike, a county road. It is evident from its subdivision report that the county planning board's review was based on the board of adjustment's resolution, not on the planning board's resolution. That report noticed the proposed dedication for turning radius purposes and the improvement along Weimars Lane which had been required by the board of adjustment, and further required that the first 20 feet of Weimars Lane in from Sussex Turnpike should be paved to keep the stones on the surface which had been prescribed by the board of adjustment "from kicking out into the county road." This report was in large measure rendered moot by the subsequent planning board resolution.
[2] It should be noted that the statutory scheme respecting planning board and board of adjustment jurisdiction over subdivision approval and conditions thereof relating to improvements is virtually identical in the case of site plan approval. Thus, while this opinion addresses only the subdivision problem, the result in site plan approval problems would ordinarily not be different than that reached here.
[3] Although the implementing Randolph ordinance is also not a part of this record, it was represented to the trial judge, without contradiction by plaintiffs, that the township has enacted such an ordinance.