**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5767-17T4

MARK G. MONTENERO,

      Plaintiff-Appellant,

v.

TOMS RIVER TOWNSHIP
PLANNING BOARD and
1209 CHURCH ROAD, LLC,

      Defendants-Respondents.

_____

> Argued December 2, 2019 – Decided March 9, 2020
>
> Before Judges Fasciale, Moynihan and Mitterhoff.
>
> On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0423-18.
>
> Jay Bently Bohn argued the cause for appellant (Schiller Pittenger & Galvin, PC, attorneys; Jay Bently Bohn, on the briefs).
>
> Kelsey Anne McGuckin Anthony argued the cause for respondent Toms River Township Planning Board (Dasti Murphy McGuckin Ulaky Koutsouris & Connors, attorneys; Gregory P. McGuckin, of counsel; Kelsey Anne McGuckin Anthony, on the brief).

Michael B. York argued the cause for respondent 1209 Church Road, LLC (Novins York & Jacobus, attorneys; Michael B. York, on the brief).

PER CURIAM

In this action in lieu of prerogative writs, plaintiff Mark G. Montenero appeals from an order for final judgment entered in favor of defendants Toms River Township Planning Board (Board) and 1209 Church Road, LLC (developer) dismissing plaintiff's complaint with prejudice. Plaintiff argues the Board's preliminary and final subdivision approval of developer's application to divide an L-shaped lot into twenty-six separate lots, with single-family homes to be built on twenty-four lots,[1] was invalid because the Board lacked a quorum during its meetings leading up to the Board's vote, and the Board's grant of two variances and a design waiver in connection with its subdivision approval was arbitrary, capricious, unreasonable or otherwise illegal. We affirm the judgment upholding the variances, but remand to the Board for further proceedings consistent with this opinion on the driveway design waiver issue.

We are not persuaded that the Board acted without a quorum. Toms River, in accordance with N.J.S.A. 40:55D-23(a), created a planning board consisting

---

[1] Two lots are to be utilized for drainage facilities.

of nine members.[2]  Toms River Twp., N.J., Land Use and Dev. Regulations Ordinance § 348-3.1 (2017).  In his merits brief, plaintiff contends five Board members were present at the initial hearing on developer's application during which developer presented the testimony of its engineer, and at the second meeting during which plaintiff's counsel was afforded an opportunity to cross-examine the engineer.[3]  The member absent during the first meeting appeared at the second meeting, but one member who was present at the first meeting was absent from the second.[4]  The vote at the second meeting was postponed because the member absent during the first hearing had not listened to the recording of that meeting, a pre-condition under N.J.S.A. 40:55D-10.2 to her voting.[5]  All six

---

[2]  N.J.S.A. 40:55D-23(a) allows a governing body to create a planning board consisting of seven or nine members.

[3]  The Board passed a motion at the first meeting to postpone its vote on the application and continue the hearing to allow objectors, including plaintiff, to have their absent counsel review the transcript and participate in the application process.

[4]  The parties and the record fail to account for the other three Board members or explain the reason only six Board members heard developer's application. That issue was not briefed, and we will not consider it.  539 Absecon Blvd., L.L.C. v. Shan Enters. Ltd. P'Ship, 406 N.J. Super. 242, 272 n.10 (App. Div. 2009).

[5]  N.J.S.A. 40:55D-10.2 provides:

members were present at the third meeting, voting five to one to approve the subdivision; the member absent from the first hearing voted against approval. Plaintiff concedes both absent members executed affidavits, attesting that they listened to the recording of the meeting they missed. Each member stated on the record of the last meeting that they had done so.

Plaintiff argues the Board lacked a required quorum of five members at the second meeting because the member absent at the first hearing had not yet listened to the recording of the first meeting and was thus ineligible to vote. He contends the four members eligible to vote did not constitute a quorum rendering that hearing "a nullity[.]"

We reject plaintiff's argument that the Board was unable to transact any business unless it had a quorum. "'Quorum' means the majority of the full authorized membership of a municipal agency." N.J.S.A. 40:55D-6. Plaintiff

A member of a municipal agency who was absent for one or more of the meetings at which a hearing was held or was not a member of the municipal agency at that time, shall be eligible to vote on the matter upon which the hearing was conducted, notwithstanding his absence from one or more of the meetings; provided, however, that such board member has available to him the transcript or recording of all of the hearing from which he was absent or was not a member, and certifies in writing to the board that he has read such transcript or listened to such recording.

relies on that portion of N.J.S.A. 40:55D-9(a) that provides: "No action shall be taken at any meeting without a quorum being present." Culling that sentence, however, ignores our Supreme Court's direction that

> "[s]tatutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole." Burnett[v. County of Bergen, 198 N.J. 408, 421 (2009)]. "When reviewing two separate enactments, the Court has an affirmative duty to reconcile them, so as to give effect to both expressions of the lawmakers' will." Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14 (2005). "Statutes that deal with the same matter or subject should be read in pari materia and construed together as a unitary and harmonious whole." Id. at 14-15.
>
> [In re Petition for Referendum on Trenton Ordinance 09-02, 201 N.J. 349, 359 (2010).]

The very next sentence of N.J.S.A. 40:55D-9(a) clarifies that the term "action" means voting on a measure: "All actions shall be taken by a majority vote of the members of the municipal agency present at the meeting[.]" When read in conjunction with the Legislature's provision allowing members who were not present at a meeting to vote on a measure if they listened to the missed meeting's recording, N.J.S.A. 40:55D-10.2, the legislative intent in enacting N.J.S.A. 40:55D-9(a) is clear. See Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009) ("Our task in statutory interpretation is to determine and

effectuate the Legislature's intent.").  No vote may be taken unless a quorum is present.

We follow the statutory directive, recognized by our Supreme Court, to explicate a legislative enactment:

> In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.
>
> [State v. Gandhi, 201 N.J. 161, 177 (2010) (quoting N.J.S.A. 1:1-1).]

In doing so, we discern a legislative scheme that requires a planning board to schedule meetings "not less than once a month . . . unless canceled for lack of applications for development to process."  N.J.S.A. 40:55D-9(a).  A planning board must also

> hold a hearing on each application for development, adoption, revision or amendment of the master plan, each application for approval of an outdoor advertising sign submitted to the municipal agency as required pursuant to an ordinance adopted under subsection g. of section 29.1 of P.L. 1975, c. 291 (C. 40:55D-39) or any review undertaken by a planning board pursuant to section 22 of P.L. 1975, c. 291 (C. 40:55D-31).
>
> [N.J.S.A. 40:55D-10(a).]

The Legislature anticipated that members of planning boards and other municipal agencies would be unable to attend every meeting and provided a mechanism for absent members to become informed of the business transacted at any missed meeting before voting at a meeting at which a quorum is present. Thus, voting is the action that requires a quorum, not the conduct of other business that is recorded for later review. See N.J.S.A. 40:55D-10(f). There was, therefore, a quorum present throughout all proceedings, including the Board's vote.

The proposed development called for homes to be built on a new cul-de-sac developer would construct intersecting with Church Road. The variances sought by the developer involved the two lots, designated 8.01 and 9.01, that were to be formed at the corner of Church Road and the new cul-de-sac, Feldmus Lane. Because the homes to be constructed had to conform to the front-yard setback requirements for both streets—sixty feet from each—front-yard variances were needed because the planned construction provided only a forty-foot setback on Church Road for each of the lots.

Developer's engineer testified that although the other lots in the proposed development fronting entirely on Feldmus Lane conformed to the zoning

ordinance, the lots at the Church Road intersection required relief. He

explained:

> It's not uncommon for us to request a front setback relief to Church Road. We would keep the front setback along our proposed access, which would be really the front yard of the property. So, Church Road would essentially become a . . . true side yard of the property. We would reduce that [setback requirement] from [sixty feet] to [forty feet].
>
> There are lots in the area, corner lots similar to this that also have that same variance that are less than [sixty feet]. On the corner of Cobblestone, there's a lot that's approximately [fifty-four] feet. And on the corner of Kalvel it's [forty-five] feet. The adjacent property, which was recently approved, that was approved at [forty feet] as well for the corner lots. It's only those corner lots.

He further testified:

> [T]here's certain criteria we have to meet for those variances. I don't see where it would impact the zone plan or master plan for the project or the surrounding area, or to be a detriment to the area. And, in fact, . . . granting this variance will allow us to basically have a . . . side garage that's more aesthetically pleasing from the roadway and also from the passerbys on Church Road[.] In Burbridge v[. Twp. of] Mine Hill[6] it was established that aesthetic appearance was actually a legitimate reason to grant a D variance. We're only looking for a C variance here. So, again, the aesthetics, I believe, outweigh the minor variance that we're

---

6 117 N.J. 376 (1990).

looking . . . for . . . what's really a side yard to be front setback.

The resolution memorializing the Board's grant of the variance sets forth the Board's findings of fact:

> WHEREAS, the Board notes that each of these [two] lots are "corner lots" as part of this subdivision fronting on Church Road; and
>
> WHEREAS, the Board recognizes that it is appropriate to have the houses face the new cul-de-sac roadway as opposed to Church Road so that same fits the character of the rest of the subdivision and eliminates driveways which would have access to Church Road, which is a high volume roadway; and
>
> WHEREAS, as a result, the corner lots essentially make Church Road a side yard; and
>
> . . . .
>
> WHEREAS, [developer] has been represented by [counsel] and submitted the testimony of [an engineer] who is qualified and accepted by the Board as an expert witness in this matter; and
>
> . . . .
>
> WHEREAS, the Board agrees that having a side garage provides a better aesthetic look to the development and it is appropriate to grant a variance for the front yard setback requirements for both [l]ots 8.01 and 9.01 as a result; and
>
> WHEREAS, the Board is satisfied there will be no negative impact from the granting of the variance

relief sought as the use proposed is permitted, it is more appropriate to face the new roadway than it would be to have the [two] corner lots facing Church Road and the application is similar to that which has been previously approved for the adjoining lot[.]

Plaintiff asserts that the resolution does not identify the type of variance granted and neither the public hearing record nor the resolution articulate "the statutory standards for the grant of variance relief or application of those standards to the evidence presented[.]  Moreover, there was not substantial evidence that would have supported the variances."

We accord substantial deference to a Board's findings of fact and will affirm its discretionary ruling only if it is arbitrary and capricious.  CBS Outdoor, Inc. v. Borough of Lebanon Planning Bd./Bd. of Adjustment, 414 N.J. Super. 563, 577 (App. Div. 2010).  As the Court in Burbridge declared:

> A court should sustain a local zoning board's determination to grant a zoning variance if that board's decision comports with the statutory criteria and is founded on adequate evidence.  If there is such support in the record, approval will not be deemed arbitrary or capricious.  Boards of adjustment, "because of their peculiar knowledge of local conditions, must be allowed wide latitude in the exercise of the delegated discretion." Medici v. BPR Co., 107 N.J. 1, 23 (1987); Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. [268, 296 (1965)].
>
> [117 N.J. at 385 (citations omitted).]

A-5767-17T4

In that planning boards also have the power to grant variances under N.J.S.A. 40:55D-70(c)—commonly called "(c) variances," see N.J.S.A. 40:55D-60—the same review standard applies to the Board's grant of the (c) variance to developer.

In relevant part, the statute provides that (c) variances, may be granted:

> (1) Where: . . . (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property . . . , the strict application of any regulation . . . would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property . . . ; [or] (2) where in an application or appeal relating to a specific piece of property the purposes of this act . . . would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment[.]
>
> [N.J.S.A. 40:55D-70(c).]

The statute further provides that a (c) variance cannot be granted unless the applicant establishes what is colloquially referred to as the negative criteria, proving that "that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance."  N.J.S.A. 40:55D-70; Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 57 (1999).

11

Plaintiff correctly observes the Board did not specify whether its grant of the (c) variances was pursuant to N.J.S.A. 40:55D-70(c)(1)—a (c)(1) variance—or N.J.S.A. 40:55D-70(c)(2)—a (c)(2) variance. But we do not agree with plaintiff's contention that the Board was required to provide analysis relating to its grant. The Board's resolution included its "findings of fact and conclusions based thereon" in compliance with N.J.S.A. 40:55D-10(g). From those findings, we deduce, as did the trial judge, the Board granted (c)(2) variances.

As to those variances, our Supreme Court explained:

> N.J.S.A. 40:55D-70(c)(2) permits a variance for a specific property, if the deviation from bulk or dimensional provisions of a zoning ordinance would advance the purposes of the zoning plan and if the benefit derived from the deviation would substantially outweigh any detriment. The applicant bears the burden of proving both the positive and negative criteria.
>
> For a (c)(2) variance, approval must be rooted in the purposes of the zoning ordinance rather than the advancement of the purposes of the property owner. Thus, the positive criteria include proof that the characteristics of the property present an opportunity to put the property more in conformity with development plans and advance the purposes of zoning[.] [T]he negative criteria include proof that the variance would not result in substantial detriment to the public good or substantially impair the purpose of the zone plan.
>
> [Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 30 (2013) (citations omitted).]

As it was free to do, see Hawrylo v. Bd. of Adjustment, Harding Twp., 249 N.J. Super. 568, 579 (App. Div. 1991), the Board evidently accepted the testimony of developer's engineer that the grant of the setback relief would conform with other developments intersecting Church Road and moreover, would allow the houses on lots 8.01 and 9.01 to conform with the homes in the development facing Feldmus Lane with side garages, producing a more aesthetically pleasing development. Instead of homes on those two lots facing Church Road, the Board determined "that it is appropriate to have the houses face the new cul-de-sac roadway as opposed to Church Road so that same fits the character of the rest of the subdivision and eliminates driveways which would have access to Church Road, which is a high volume roadway[.]" The Board also adopted the uncontroverted testimony of developer's engineer, and concluded the variances would not have any negative impact, and "it is more appropriate to face the new roadway than it would be to have the [two] corner lots facing Church Road[,] and the application is similar to that which has been previously approved for the adjoining lot[.]"

We note the Board also perpended the detailed plans submitted by developer that illustrate the location of the two corner lots on Church Road in relation to the entire development. Those plans, in conjunction with the

13                                                                                          A-5767-17T4

engineer's testimony, supported the position advanced to the Board by developer's counsel: "[I]f you don't approve the variance . . . [t]he houses merely get moved [twenty] feet further away from Church Road. And the driveway and the garage will now be in the front of the house." The conformity of houses in the cul-de-sac and the elimination of ingress and egress on the busier Church Road support the Board's implicit finding that developer met the positive criteria.

From the proffered evidence and the reasonable inferences that could have been drawn therefrom, the Board found developer's counsel's suggestion—made in summation to the Board that the development with the variances is "a better plan and design"—a sound one, supporting the Board's finding that the deviations, also made in other developments, would not have a negative impact resulting in substantial detriment to the public good or substantial impairment to the purpose of the zone plan. The Board obviously focused on the surrounding properties in making that determination and found the development with the granted variances was a better zoning alternative.

We defer to the Board's factual determinations, which were based on its assessment of the witness testimony and documentary evidence, and its "'peculiar knowledge of local conditions[.]'" Burbridge, 117 N.J. at 385

14

(quoting Medici, 107 N.J. at 23; Kramer, 45 N.J. at 296). We see no basis to disturb the Board's conclusions regarding the grant of the variances.

The Board also considered developer's requests for exceptions to subdivision approval requirements—or "design waivers"—only one of which is in issue on appeal. N.J.S.A. 40:55D-51(a) permits a planning board to grant

> exceptions from the requirements for subdivision approval as may be reasonable and within the general purpose and intent of the provisions for subdivision review and approval of an ordinance adopted pursuant to this article, if the literal enforcement of one or more provisions of the ordinance is impracticable or will exact undue hardship because of peculiar conditions pertaining to the land in question.

In his merits brief, plaintiff set forth Ordinance § 348-8.11.1D, the design standards from which developer sought the waiver in question; it provides in part:

> Driveways serving one- or two-family dwellings shall be no closer than five feet to a side or rear lot line, except that lots less than 4[]000 square feet in lot area or [forty] feet or less in lot width shall have driveways no closer than two feet to a side or rear lot line.

Developer's engineer described the waiver in his testimony before the Board:

> On lots 8.02 and 8.03, 8.04, 9.03, 9.04, 2.02, 2.09 and 2.10, we would request that a setback of two feet to the property line for the driveway where five feet is

15

required. That gives us room to basically have a side back out, to provide a side garage out of house, back out and then come down. We . . . would be willing to stipulate that driveways would have to be ten feet apart as a condition, so there's separation between driveways. But, basically, we're trying to keep the driveways consistent going down the roadway, so that they're not up against each other. So, we're requesting that waiver of, basically, two feet.

Addressing the waiver request in its resolution, the Board found:

> WHEREAS, [developer] . . . requires a waiver with respect to the setback for the driveways, [five feet] required, [two feet] proposed on eight of the proposed lots; and
>
> WHEREAS, the Board is amenable to granting that waiver provided [developer] agrees that the driveways shall be located at least [ten feet] apart and [developer] has agreed to same[.]

We agree with plaintiff that the Board failed to address how "the literal enforcement of one or more provisions of the ordinance is impracticable or will exact undue hardship because of peculiar conditions pertaining to the land in question." N.J.S.A. 40:55D-51(a). Unlike its findings related to the variances, we cannot glean the Board's reasoning from its findings. The bald conclusions set forth in the resolution are inadequate to support the grant of the waiver.

We fully appreciate, as we recognized in Amato v. Randolph Twp. Planning Bd., 188 N.J. Super. 439, 447 (App. Div. 1982), "if particular

16

requirements for development are imposable upon an applicant as conditions of subdivision approval, they may only be imposed, relieved from, or varied as part of the consideration of and action on the subdivision application." We determined a planning board has the discretionary power under N.J.S.A. 40:55D-51(a) to grant relief from any requirement. Id. at 452.

But, here, as was the case in Amato,

> no reviewing court, either this court or the Law Division, can make a determination as to whether that power was reasonably and sustainably exercised since the resolution here complained of, which required strict enforcement, is completely silent as to the considerations set forth by N.J.S.A. 40:55D-51(a) governing disposition of an application for relief. There is not a single finding of fact or conclusion respecting the reasonableness of plaintiffs' request, the consistency thereof with the general purpose and intent of subdivision control, the impracticability of strict enforcement or the undue hardship resultant from strict enforcement.
>
> [Ibid.]

In short, the Board failed to state why the exception for the driveways should be granted under the statutory criteria.[7] The necessity of those findings has long been a bedrock requirement in administrative law. Id. at 453.

---

[7] The trial court's conclusory decision on this issue, without mention of the statutory requirements, states:

We are constrained to remand this case to the Board for reconsideration and specific findings with regard only to the driveway design waiver. Ward v. Scott, 11 N.J. 117, 129 (1952). We leave to the Board's discretion the outcome of the exception request. Affirmed in part; remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

The approval of the design waivers by the Board was within the exercise of sound discretion of the Board, and in reliance upon the expert recommendations of its engineer. Waivers are distinguishable from variances in that they address issues of design standards for subdivision and site plan approval and the Board routinely considers modifications of these design standards.