761 A.2d 111 (2000)
335 N.J. Super. 111
David SMITH, Kimberly Smith, Frank Cracolici, Jesse Y. Harris and Marcelene Harris, Plaintiffs-Appellants,
v.
The FAIR HAVEN ZONING BOARD OF ADJUSTMENT, John M. Ridgeway and Donna M. Ridgeway, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 2000.
Decided November 13, 2000.
*113 Michele R. Donato argued the cause for appellants.
John G. Colannino, Monmouth Beach, argued the cause for respondent Fair Haven Zoning Board of Adjustment.
Ralph E. Polcari, Red Bank, argued the cause for respondents John M. Ridgeway and Donna M. Ridgeway (Drazin & Warshaw, attorneys; Mr. Polcari, on the joint brief).
Before Judges BAIME and WALLACE.
*112 The opinion of the court was delivered by BAIME, P.J.A.D.
Plaintiffs appeal from a judgment of the Law Division sustaining the grant of dimensional variances by the Fair Haven Zoning Board of Adjustment. They assert: (1) the Board lacked jurisdiction, (2) Board members engaged in impermissible ex parte communications during site visits, (3) the Board improperly limited the testimony of objectors, and (4) the grant of the bulk variances was arbitrary and capricious. We find no merit in plaintiffs' first three points. However, we remand the matter to the Board for reconsideration due to the inadequacy of the factual findings set forth in the resolution granting the variances.

I.
We need not recount the facts at length. In 1989, the predecessors in title of John and Donna Ridgeway applied to the Fair Haven Planning Board for a subdivision of their property. Lot 23 contained a house which did not conform to the front yard setback requirement of the applicable ordinance. The house had been built before the Civil War. Included in the subdivision application was a request to construct a two-story addition. The proposed addition did not increase any existing non-conformity because the front facade setback was *114 maintained. However, the then-existing garage was to be relocated to a conforming position. The Planning Board granted approval to the subdivision of the property and the proposed addition.
The Ridgeways purchased the property the following year, but they took no action to construct the proposed addition. The matter remained dormant until 1998, when the Ridgeways applied to the Zoning Board to construct a two-story addition to the house. The proposal differed from that previously approved by the Planning Board in various particulars. As we understand it, the Ridgeways' plan was to move the proposed addition from the rear to the front of the house, further encroaching on the front yard setback. Their application requested dimensional variances to: (1) reduce the required 100 foot minimum frontage to 99.54 feet, (2) reduce the required 100 foot minimum depth to 99 feet, (3) build on a lot fronting on a street that did not comport with Borough standards, and (4) enlarge the existing structure having a front yard setback of 12.3 feet where a minimum of 30 feet is required. We have no occasion to further characterize the bulk variances sought. It is fair to say, however, that although the proposed addition vastly expanded the living space allowed under the Planning Board's earlier approval of the subdivision, the new application reduced the front yard setback a mere foot.
We need not describe the heated arguments that ensued. The Zoning Board considered the application in the course of several meetings. Although the issue was hotly contested, the Ridgeways presented substantial evidence rebutting the claims of nearby property owners that the proposed addition was too large and was detrimental to the zone plan. Much of the Zoning Board's attention was focused on concerns that part of the property was occupied by a cemetery consisting of the graves of freed slaves. The evidence presented on this subject can fairly be characterized as equivocal. Apparently, the proceedings were widely reported in local newspapers.
In any event, the Zoning Board granted the dimensional variances requested by the Ridgeways. In its resolution, the Zoning Board cited the testimony of the Ridgeways' witnesses to the effect that the proposed construction would have less of an impact on neighboring properties than that approved by the Planning Board a decade before. The Zoning Board also addressed the specific claims of several of the objectors, finding that they lacked substance. Noting that "one of the objectives of zoning is to improve properties and provide additional space," the Zoning Board concluded that "the proposed construction would not be detrimental to adjacent properties." The Zoning Board conditioned its grant of the bulk variances on continuous monitoring of the construction by an archaeologist and municipal officials.
Plaintiffs brought an action in lieu of prerogative writs challenging the Zoning Board's decision. Among other arguments, they asserted that members of the Zoning Board had engaged in impermissible ex parte communications while visiting the site. The Law Division judge remanded the matter to the Zoning Board for supplementation of the record concerning visits to the site and any conversations between members and other individuals. After the record was supplemented, the judge found that none of the discussions between members and other individuals was improper or prejudicial to the rights of the applicants or the objectors. The judge also rejected plaintiffs' other claims. Specifically, the judge concluded that: (1) the Planning Board had relinquished jurisdiction after approving the subdivision a decade earlier, and, therefore, the Zoning Board had the authority to consider the Ridgeways' application for dimensional variances, (2) the Zoning Board conducted its meetings in an appropriate fashion, and (3) the grant of the variances was not arbitrary or capricious. This appeal followed.

*115 II.
We first consider plaintiffs' procedural arguments. These contentions lack merit.

A. JURISDICTION

We agree with Judge Lawson that jurisdiction was vested in the Zoning Board. Although the Planning Board originally had jurisdiction to grant dimensional variances when it considered and approved the subdivision proposed by the Ridgeways' predecessors in title, see N.J.S.A. 40:55D-60, that agency exercised its powers in 1989. It did not retain jurisdiction over subsequent applications for dimensional variances. It was not incumbent upon the Ridgeways to return to the Planning Board a decade after that agency relinquished jurisdiction.
N.J.S.A. 40:55D-37 reposes the subdivision approval power in the municipal planning board. That authority is not among the powers accorded by the statute to the board of adjustment. See N.J.S.A. 40:55D-70. N.J.S.A. 40:55D-70(c) expressly prohibits the board of adjustment from granting a variance where the proposed development requires planning board subdivision approval. These sections do not mean, however, that the planning board's power to consider dimensional variance requests in connection with subdivision approval is eternal. Once the planning board has exercised its authority and has relinquished jurisdiction, future variance applications may be made before the board of adjustment. See N.J.S.A. 40:55D-70(c)(1) and (2).
It is true that the Ridgeways' lot was initially created through a subdivision approved by the Planning Board in 1989. To argue, however, that because the lot was created by a subdivision, the Planning Board retained jurisdiction in perpetuity is plainly incorrect. Most current housing was developed in connection with subdivisions. If plaintiffs' argument was given currency, almost all variance requests would come before the planning board. That was obviously not the intent of the Legislature when it enacted the Municipal Land Use Law (MLUL).
The conclusion we have reached is not incompatible with our decision in Amato v. Randolph Tp. Planning Bd., 188 N.J.Super. 439, 457 A.2d 1188 (App.Div.1982). There, we said that "if particular requirements for development are imposable upon an applicant as conditions of subdivision approval, they may only be imposed, relieved from, or varied as part of the consideration of and action on the subdivision application." Id. at 447, 457 A.2d 1188. We added that "[t]hey may not be independently considered by another municipal agency apart from and out of the context of the subdivision application." Ibid. Our purpose was to prevent "simultaneous[ ]" and "concurrent[ ]" consideration by the board of adjustment and planning board of different aspects of the same development. Id. at 448, 457 A.2d 1188. However, once the planning board has exercised its power and has completed its consideration of a subdivision and variance application, the single-agency review predicate of the MLUL is neither subverted nor undermined by a later, entirely different application made to the board of adjustment. The result would be different if the application were merely to amend an action taken by the planning board shortly after that agency has exercised its power. But that is not what happened here. The Law Division properly concluded that the Zoning Board had jurisdiction to consider the Ridgeways' application.

B. EX PARTE COMMUNICATIONS

Several members of the Zoning Board inspected the Ridgeways' property and in the course of those visits engaged in conversations with either the Ridgeways, the objectors or both. On remand to the Zoning Board, these individuals testified generally that they made no observations that were not discussed at the public hearings. They also recounted that their discussions with the Ridgeways and the objectors *116 did not go beyond the arguments and allegations advanced in the course of the proceedings. Based upon the record, as supplemented, Judge Lawson found no impropriety warranting judicial intervention. We agree with this conclusion.
We have stated that "a board may and indeed is expected to bring to bear in its deliberations the general knowledge of the local conditions and experiences of its individual members." Baghdikian v. Board of Adjustment, Borough of Ramsey, 247 N.J.Super. 45, 50, 588 A.2d 846 (App.Div.1991); see also Kramer v. Board of Adjustment of Sea Girt, 45 N.J. 268, 284, 212 A.2d 153 (1965). In addition to reliance on personal knowledge, site inspection by zoning board members has been approved by our Supreme Court. Giordano v. City Comm'n of City of Newark, 2 N.J. 585, 588, 67 A.2d 454 (1949). In view of its flexible role, "it makes good sense not to straightjacket a board of adjustment with all of the rigid procedural standards imposed upon trial judges." Baghdikian v. Board of Adjustment, Borough of Ramsey, 247 N.J.Super. at 50, 588 A.2d 846. Nevertheless, "the knowledge gained from a site inspection must be placed on the record so that the essence of a fair hearing is provided and a full reviewable record is made." Id. at 51, 588 A.2d 846 (citing Giordano v. City Comm'n of City of Newark, 2 N.J. at 588-89, 67 A.2d 454; Peoples Trust Co. of Bergen County v. Board of Adjustment of Hasbrouck Heights, 60 N.J.Super. 569, 160 A.2d 63 (App.Div.1959)). Although counsel and opposing parties need not be present during the site inspection, "it is preferable that prior notice be given at the hearing to afford the applicant and interested parties an opportunity to prepare a response to the knowledge gained by the board member as a result" of his or her visit to the property. Id. at 52, 588 A.2d 846. Applying these principles, we find no sound basis to disturb the result reached by the Law Division judge.
We are, nevertheless, compelled to add several additional cautionary comments. As we have noted, a board member's "peculiar knowledge of local conditions" properly comes into play in determining whether a variance application satisfies the statutory criteria. Medici v. BPR Co., 107 N.J. 1, 23, 526 A.2d 109 (1987) (quoting Kramer v. Board of Adjustment of Sea Girt, 45 N.J. at 296, 212 A.2d 153). A board of adjustment does not function in a vacuum but, instead, is expected to bring to bear in its deliberations the general knowledge and collective experiences of its individual members. Reinauer Realty Corp. v. Nucera, 59 N.J.Super. 189, 201, 157 A.2d 524 (App.Div.1960). This much conceded, we do not believe that board members should engage in ex parte discussions with interested parties concerning the merit or lack of merit of a particular application during a visit to the site. Some conversation may be necessary. However, discussions should be limited to those that enable the board members to view the condition or conditions at issue at the site. Interested parties should confine their arguments to the hearings conducted by the board. Such arguments should not be advanced ex parte in the guise of assisting board members in their inspection of the site. A board's decisions should be made on the basis of the evidence presented at its formal hearings. This ensures due process. It is also essential for proper appellate review.
Our examination of the record discloses that this policy was not followed with exactitude in this case. For example, on one occasion, an objector forcefully expressed his view to a Board member who was inspecting the site that the Ridgeways' application should not be granted. However, that Board member did not vote on the Ridgeways' application. Other discussions between Board members and interested parties can fairly be described as *117 innocuous. We are satisfied that none of the parties was prejudiced.

C. CONDUCT OF THE BOARD

As we mentioned, the Ridgeways' application was widely reported in local newspapers. The various issues were hotly contested at the Zoning Board's meetings. The Zoning Board found it necessary to impose a maximum time requirement during the public comment portion of the hearings. Plaintiffs were, nevertheless, afforded numerous opportunities to express their views. They fully availed themselves of those opportunities. We perceive no abuse of the Zoning Board's discretionary powers.

III.
We now turn to the merits of the Ridgeways' application. The Ridgeways sought dimensional variances under N.J.S.A. 40:55D-70(c)(1) and (2). The operative statutory language reads as follows:
c. (1) Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 of this act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, [the board of adjustment shall have the power to] grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship; (2) where in an application or appeal relating to a specific piece of property the purposes of this act would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, [the board of adjustment shall have the power to] grant a variance to allow departure from regulations pursuant to article 8 of this act.
Subsection c(1) describes the grounds on which a bulk variance can be granted based on "undue hardship." Three categories of proof satisfy the statutory criteria: (1) exceptional narrowness, shallowness or shape of the property, (2) exceptional topographic conditions or physical features uniquely affecting the property, and (3) an exceptional situation uniquely affecting the property or its lawfully existing structures.
While these requisites can be articulated with disarming ease, "the term `undue hardship' has been a fertile source of confusion." Lang v. Zoning Board of Adjustment, Borough of North Caldwell, 160 N.J. 41, 52, 733 A.2d 464 (1999). The phrase does not pertain to the personal circumstances of the particular applicant. Id. at 53, 733 A.2d 464. It instead focuses on "whether the strict enforcement of the ordinance would cause undue hardship because of the unique or exceptional conditions of the specific property." Ibid.; see also Isko v. Planning Board of Livingston, 51 N.J. 162, 174, 238 A.2d 457 (1968); Place v. Board of Adjustment of Saddle River, 42 N.J. 324, 331, 200 A.2d 601 (1964); Home Builders Ass'n v. Borough of Paramus, 7 N.J. 335, 343, 81 A.2d 753 (1951). The unique condition of the property must be the "cause" of the hardship claimed by the applicant. Lang v. Zoning Board of Adjustment, Borough of Caldwell, 160 N.J. at 56, 733 A.2d 464. The Board's inquiry should thus be directed to "whether the unique property condition relied on by the applicant constitutes the primary reason why the proposed structure does not conform to the ordinance." Id. at 56, 733 A.2d 464; see also Bressman v. Gash, 131 N.J. 517, 521, 621 A.2d 476 (1993).
Subsection c(2) provides an alternative ground for the grant of bulk or *118 dimensional variances. Undue hardship based on the unique condition of the property need not be established. However, a c(2) variance "must be rooted in the purposes of zoning and planning itself and must advance the purposes of the MLUL." Kaufmann v. Planning Bd. for Warren Tp., 110 N.J. 551, 562, 542 A.2d 457 (1988). "By definition, then, no c(2) variance should be granted when merely the purposes of the owner will be advanced." Id. at 563, 542 A.2d 457. The variance "must actually benefit the community in that it represents a better zoning alternative for the property." Ibid. The focus of a c(2) inquiry "will not be on the characteristics of the land that, in the light of current zoning requirements, create a `hardship' on the owner warranting a relaxation of standards, but on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community." Ibid.
Within this analytical framework, the resolution adopted by the Zoning Board is woefully inadequate. The resolution does not indicate whether the variance granted by the Zoning Board was based on "undue hardship" caused by the unique condition of the land or structure, or instead was predicated upon the characteristics of the land or structure that afforded an opportunity for improved zoning and planning. Nor does the resolution describe or specify the unique condition of the property or structure resulting in undue hardship under c(1). And finally, the resolution does not specify the characteristics of the land or structure that present an opportunity for improved zoning under c(2). The Zoning Board's enigmatic reference to "providing additional space," as an appropriate zoning objective, was far too nebulous a finding upon which to ground the grant of a c(1) or (2) variance. Although the Zoning Board was sufficiently precise in its findings that the negative criteria were established, the resolution otherwise does not pass muster.
In sum, the record before us does not adequately embody the necessary administrative findings. Grundlehner v. Dangler, 29 N.J. 256, 270, 148 A.2d 806 (1959); Ward v. Scott, 11 N.J. 117, 128, 93 A.2d 385 (1952). The vital importance of such findings has long been stressed by our courts. See, e.g., Delaware, Lackawana & Western Railroad Co. v. City of Hoboken, 10 N.J. 418, 91 A.2d 739 (1952). Justice will best be served by remanding the case to the Zoning Board for reconsideration and specific findings. Ward v. Scott, 11 N.J. at 129, 93 A.2d 385. The Zoning Board may in its discretion require further proofs and obtain additional information pertaining to the disputed facts.
Accordingly, the Law Division's judgment is affirmed in part and reversed in part. The matter is remanded to the Zoning Board for further proceedings consistent with this opinion. We do not retain jurisdiction.