800 A.2d 908

WENDY KELMAN NEU AND JOHN NEU, PLAINTIFFS–APPEL-LANTS, v. THE PLANNING BOARD OF THE TOWNSHIP OF UNION, DEFENDANT–RESPONDENT, AND K. HOVNANIAN COMPANIES OF NORTH CENTRAL JERSEY, INC.; ELIZA-BETHTOWN WATER COMPANY; AND APPLIED WASTEWA-TER MANAGEMENT; DEFENDANTS/INTERVENORS–RE-SPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted March 5, 2002—Decided July 2, 2002.

546

Before Judges PRESSLER, PARRILLO and COLEMAN.

*Rutgers Environmental Law Clinic,* attorneys for appellants (*Thomas A. Borden,* on the brief).

*Novak & Novak,* attorneys for respondent, (*Joseph S. Novak,* on the brief).

*Greenbaum, Rowe, Smith, Ravin, Davis & Himmel,* attorneys for respondent/intervenors (*Peter A. Buchsbaum,* of counsel; *Michele Gibson* on the brief).

The opinion of the court was delivered by

COLEMAN, J.S.C. (temporarily assigned).

Plaintiffs Wendy and John Neu (Neu) are homeowners in the Township of Franklin in Hunterdon County. Their water is supplied by a well on their property. That property is 3500 feet from a proposed subdivision in the adjacent municipality of Union Township. Plaintiffs sought by action in lieu of prerogative writ to challenge the final approval of the major subdivision and site plan of a property known as Milligan Farm by defendant Planning Board of the Township of Union (the Board). Plaintiffs claim the applicants, defendant-intervenors K. Hovnanian Companies of North Central Jersey, Inc. (Hovnanian), Elizabethtown Water Co. (Elizabethtown), and Applied Wastewater Management (AWM) did not satisfy the requirements of Union Township Ordinance 99–14, which provides for certain aquifer testing and monitoring of existing wells. The trial court determined that Ordinance 99–14 did not apply to the application. Plaintiffs appeal the trial court's order granting summary judgment in favor of defendants. We affirm the order of the trial court.

On April 23, 1998, the Board granted preliminary approval of the major site plan and subdivision submitted by Hovnanian for Milligan Farm. The subdivision consisted of 292 units, 117 single family homes and 175 townhouses. The subject property comprised the entire area of the *Rm–1 Multifamily District* of the Township and was an integral part of the Township's housing element and Fair Share Plan which was granted substantive certification by the New Jersey Council on Affordable Housing (C.O.A.H.) The Board conducted some 24 public hearings in

arriving at its preliminary approval on the project. That preliminary approval included Condition Number 14, which states:

The Planning Board shall retain jurisdiction of the on-site water system proposed for the project. Any proposed use of any well on the site for other than the property owners in the project, and including any proposed interconnection with the Town of Clinton water system or diversion thereto shall not be permitted, without the prior, written agreement of the Union Township governing body and the Planning Board. The water system to be constructed on the site by the developer shall be subject to review and approval by the Township Engineer. The Township governing body shall retain jurisdiction over this matter to the extent that there are franchise or other related issues.

As had been contemplated at the time of preliminary approval, Hovnanian first sought to arrange a water connection with nearby Clinton Township. When negotiations with Clinton proved unsuccessful, Hovnanian proposed an on-site water system consisting of an elevated storage tank and associated improvements. It, therefore, applied for amended preliminary site plan approval and final site plan and major subdivision approval. That application was deemed complete by the Board on September 23, 1999.

During the next year, the Board conducted ten public hearings on the project. Concerns were repeatedly raised over the aesthetic impact of the 108 foot water tower proposed by Hovnanian and Elizabethtown, which had been granted the water franchise for the development, and over the potential for diversion of water from the tank to other developments. In consideration of those concerns, the Board commissioned an independent engineering firm to examine alternative water systems, particularly alternatives employing ground-level water tanks. That firm prepared a report, referred to as the Weston Report, dated July 12, 2000, which proposed several ground-level alternatives to the water tower. The Weston Report was made available for immediate public review. Because that availability was not sufficiently in advance of a special meeting of the Board originally scheduled for July 18, 2000, the meeting was adjourned and consideration of the Weston Report was placed on the agenda of the next regular meeting of the Board on July 27, 2000.

Prior to that date, on July 14, 2000, two representatives of Hovnanian, Joseph Riggs and Thomas Piscitelli, met with Mayor and Board member Bruce Rossi, Board Chairman Thomas Ricker and Board Engineer Robert Bogart in a diner in Union. That meeting was not subject to public notice and the meeting was not recorded. A joint statement certified by the attendees was submitted to the trial court; it indicated that the meeting involved discussions about the Weston Report and whether, based on the alternatives explored therein, the developer would utilize a ground-level water storage tank, rather than the tower it had previously proposed.[1] There were also discussions regarding the transfer of the water supply rights from Elizabethtown to AWM, a wholly-owned subsidiary of Elizabethtown, in order to facilitate construction of a ground-level tank.

Earlier on December 1, 1999, Municipal Ordinance No. 99–14, commonly referred to as Amendment No. 48, had been adopted; it became effective December 9, 1999. That ordinance required any major subdivision developer to test at least three wells within 500 feet of its proposed subdivision and to inventory or map all wells within 1000 feet of the subdivision. Plaintiffs contend approval of the Milligan Farm development should have been denied or withheld until Hovnanian satisfied those requirements. Hovnanian and the Board contend that Amendment No. 48 applied only to new applications and that it did not affect the Milligan Farm development. In fact, on March 9, 2000, the Township had passed Ordinance 2000–2, commonly referred to as Amendment No. 49, which officially expressed that interpretation. It states:

> Amendment No. 48 ... shall have no application and shall not control those lands as to which an application for subdivision was then pending before the Planning Board of the Township of Union, provided, however, that said application was then deemed complete in accordance with the regulations of the Planning Board of the Township of Union.

---

[1] We take no cognizance of the wholly speculative version of the meeting offered by plaintiffs. That version was based on uncertified hearsay statements which the court below properly declined to consider. *R.* 4:46–5.

Plaintiffs, whose counsel appeared before the Board during the public hearings, nevertheless sought to have the Board require Hovnanian to comply with the testing and mapping requirements of Amendment No. 48. The Board eventually determined that the subdivision was exempt from compliance with that ordinance because of the preliminary approval granted to the subdivision prior to the adoption of Amendment 48 and because its Certification of Completeness had been issued in September 1999.[2] Final approval was granted on October 26, 2000 and memorialized by Resolution No. 14–99.

Plaintiffs filed their action in lieu of prerogative writ seeking to have the amended preliminary and final site plan approval declared null and void and to require that any future applications comply with Ordinance 99–14, Amendment No. 48. Plaintiff asserted two grounds for such relief: (1) that the water testing ordinance should have been applied to the subdivision, and (2) that the ex parte meeting of township officials and representatives of Hovnanian on July 14, 2000 was illegal and required nullification of the subdivision approval. The trial court, in a written opinion from which we quote at length stated:

Upon review of the record, this court finds that plaintiffs do not have standing to maintain this action as Ordinance 99–14 does not apply to the plaintiffs' property.

*[Recital of text of Amendment No. 49 is omitted.]*

The facts of the case clearly show that at the time of the adoption of Ordinance 99–14 (or Amendment 48) on December 1, 1999, Intervenors Hovnonian (sic) and Elizabethtown Water Company had already received preliminary and final site plan and major subdivision approval on April 23, 1998. In addition, the amended application, which merely reflected the condition of reviewing any proposed water system, had been submitted to the Board and deemed complete on September 23, 1999.

---

[2] In this appeal, the Board also observed that the water tests required of Hovnanian for approval by N.J.D.E.P. were as stringent, if not more so than those required by Ordinance 99–14, and that compliance with standards imposed by N.J.D.E.P. would adequately insure the safety and reliability of the proposed water system. That finding was not a basis of and is not necessary to sustain the court's order granting summary judgment.

> Based on these facts, this court finds that there are no genuine issues of material fact that precludes summary judgment because the undisputed facts show that Ordinance 99–14 was not applicable to plaintiff's property by the very language of Amendment 49 regarding the applicability of Ordinance 99–14 (or Amendment 48). Amendment 49 states that Amendment 48 (or Ordinance 99–14) does not apply to those lands to which an application for subdivision was then pending at the time of adoption of the ordinance, and it is undisputed that the subject application was then pending when the Board adopted Ordinance 99–14.
>
> The parties take issue with the fact that the Ordinance 99–14 requires aquifer testing of wells within 1,000 feet of the subject development and the fact that plaintiff's property is located 3,500 feet from the subject development. However, these arguments appear to be irrelevant since the question to be decided is whether the plaintiff's property is subject to Ordinance 99–14 or not, and as stated above, this court has determined Ordinance 99–14 to be inapplicable to the plaintiff's property.
>
> Therefore, because this court finds that pursuant to Amendment 49 Ordinance 99–14 does not apply to the plaintiff's property, this court finds that plaintiffs do not have standing to maintain the present action and thus defendant's motion for summary judgment is GRANTED.

Although we agree with the basis for the ruling, we disagree with the court's characterization of its ruling. A judgment will be affirmed on appeal if it is correct, even if the judge provided the wrong reasons for the decision. *See, e.g., Govito v. West Jersey Health System,* 332 *N.J.Super.* 293, 321, 753 *A.2d* 716 (App.Div. 2000); *Gerber v. Springfield Bd. of Educ.,* 328 *N.J.Super.* 24, 40, 744 *A.2d* 670 (App.Div.2000).

The court correctly ruled the Milligan Farms application was pending and deemed complete prior to the adoption of Ordinance 99–14, Amendment No. 48 and was, therefore, not subject to the requirements of Ordinance 99–14. No reasonable doubt can exist as to the correctness of that ruling when Ordinance 2000–2, Amendment No. 49 is considered; the obvious intent and purpose of that ordinance was to make it clear that the scope of Amendment No. 48 was to be prospective only. That did not mean, as the trial court stated, that plaintiffs lacked standing to pursue their asserted cause of action. That simply meant that plaintiffs' asserted cause of action had no substantive merit and was properly subject to dismissal on motion.

■ In general terms, "standing requires that a litigant have a sufficient stake and real adverseness with respect to the subject matter of the litigation, and a substantial likelihood that some harm will fall upon it in the event of an unfavorable decision." *In re New Jersey Bd. of Public Utilities,* 200 *N.J.Super.* 544, 556, 491 *A.*2d 1295 (App.Div.1985). *See also Stubaus v. Whitman,* 339 *N.J.Super.* 38, 47, 770 *A.*2d 1222 (App.Div.2001), *certif. denied,* 171 *N.J.* 442, 794 *A.*2d 181 (2002). Under the Municipal Land Use Law, an "interested party" is defined as "any person whether residing within or without the municipality, whose right to use, acquire or enjoy property is or may be affected by any action taken under this act." *N.J.S.A.* 40:55D–4. Even though plaintiffs are not residents or taxpayers of the Township of Union, as owners of property in an adjacent township within close proximity to the proposed major subdivision, they arguably may be affected by decisions concerning water supply and on-site wells within the proposed subdivision. They have a sufficient stake to have standing to question Board actions that might impact upon the well on their property. On the other hand, taking into account the undisputed facts related to the claim asserted by plaintiffs, the trial court properly concluded that neither the language nor intent of the ordinances adopted by the Township of Union subjected the Milligan Farm development to the requirements of testing and mapping which plaintiffs claim should pertain. As a matter of law, plaintiffs' complaint did not present a viable cause of action. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 666 *A.*2d 146 (1995).

Plaintiffs' argument that the Milligan Farm application was not "pending" when Ordinance 99–14 was adopted in December 1999 is misconceived. "Pending" simply means "not yet decided." *Webster's Third New International Dictionary* 1669 (1993). The Township adopted Amendment No. 49 to clarify that not all pending applications would be exempt from Amendment No. 48, only those that were pending and already deemed complete. That an application is deemed complete is a matter of consequence in the context of subdivision approvals. Once an application is

deemed complete the planning board is required to take action within a period of time fixed by the Municipal Land Use Law. *N.J.S.A.* 40:55D–10.3. The failure on the part of a board to act within the prescribed time period "shall constitute approval of the application." *N.J.S.A.* 40:55D–61.

The subdivision and site plan had been the subject of planning board consideration for well over one year prior to the effective date of Amendment No. 48. Preliminary approval had been granted in April 1998, more than 18 months prior to the effective date of Amendment No. 48. The application had been deemed complete by the Board more than two months prior to that date. While public hearings had not been completed, such hearings were scheduled to occur and were proceeding in the ordinary course of planning board business. The trial judge properly concluded there was no genuine issue of fact as to whether the application was both pending and deemed complete prior to Amendment No. 48 becoming effective. Under these circumstances, the application was exempt from the requirements of Ordinance 99–14, Amendment No. 48 by the operation of Ordinance 2000–2, Amendment No. 49.

Plaintiffs contend that this court should nevertheless reject the action of the Board because Amendment No. 49, expressly declaring the inapplicability of Amendment No. 48 to pending and complete applications, is not in the public interest. We decline the invitation to override on this record the determination of the governing body and planning board as to whether their treatment of development issues within their authority is in the public interest. "A presumption of validity attaches to a zoning ordinance that may be overcome only if an opponent of the ordinance establishes the ordinance is 'clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the zoning statute.'" *Manalapan Realty, L.P. v. Township Committee of Tp. of Manalapan,* 140 *N.J.* 366, 380, 658 *A.2d* 1230 (1995). A municipality may change its zoning ordinance during the pendency of a site plan application, even if the ordi-

nance is amended in direct response to a particular application. *Id.* at 378–379, 658 *A.*2d 1230. The record indicates this development was considered in light of the Township's revision of its master plan, the satisfaction of its affordable housing obligations and other permissible planning considerations. Plaintiffs have not demonstrated and we do not perceive that the actions of the Board were arbitrary, capricious or unreasonable. We will not presume the Board's decision was not in the public interest.

■ Finally, plaintiffs contend that the trial court erred in granting summary judgment because there was a factual dispute regarding the content of the *ex parte* meeting of Board members and representatives of the development. We disagree. We note that there is no allegation that the meeting violated the Open Public Meetings Act, *N.J.S.A.* 10:4–6 *et seq.* Pursuant to *N.J.S.A.* 10:4–8b, "meeting" does not mean or include any gathering attended by less than an effective majority of the members of a public body. Here, two of the nine members of the Board and a staff engineer attended the asserted *ex parte* meeting. The trial court noted that plaintiffs had shown no harm as a result of the meeting. Accepting that the *ex parte* meeting involved discussions about the use of a ground-level water tank as an alternative to the previously proposed water tower, that was nothing new or secret. Moreover, plaintiffs have nowhere alleged that any action was taken or decision made that was not the subject of subsequent public hearings.

Plaintiffs point out that in *Smith v. Fair Haven Zoning Bd. of Adjustment,* 335 *N.J.Super.* 111, 761 *A.*2d 111 (App.Div.2000), we cautioned that board members should not engage in *ex parte* communications with interested parties concerning the merit or lack of merit of a particular application during an inspection of the site. We stated that such inspections should be subject to notice and that a board's decision should be made on the basis of the evidence presented at its formal hearings. *Id.* at 119–120, 761 *A.*2d 111. Unlike the situation in *Smith,* the discussion at the diner did not involve the entire board. Only two members of the

Board and a staff engineer were present. Thus, no action by the Board could have been taken. Most importantly, the merits of the subdivision application, in light of the Weston Report, were openly discussed in public hearings on at least ten subsequent occasions. We are satisfied that there was no basis for the trial court to nullify the Board's extensive open deliberations because of the meeting cited by plaintiffs.

The order of the trial court granting summary judgment is hereby affirmed.