NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3414-24

HIGHER BREED NJ LLC,

    Plaintiff-Respondent,

v.

THE CITY OF BURLINGTON
COMMON COUNCIL,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

March 3, 2026

APPELLATE DIVISION

Submitted February 3, 2026 – Decided March 3, 2026

Before Judges Gilson, Perez Friscia, and Vinci.

On appeal from the Superior Court of New Jersey,
Law Division, Burlington County, Docket No. L-
1341-24.

Michael A. Armstrong & Associates LLC, attorneys
for appellant (Michael A. Armstrong, on the briefs).

Fox Rothschild LLP, attorneys for respondent
(Michael J. Malinsky and Amanda Moscillo, of
counsel and on the brief).

The opinion of the court was delivered by

PEREZ FRISCIA, J.A.D.

In this action in lieu of prerogative writs, we consider whether defendant the City of Burlington Common Council (City Council) was required to provide a reason for denying plaintiff Higher Breed NJ LLC's (Higher Breed) application for a resolution of local support (ROS), N.J.A.C. 17:30-7.10(b)(9). Higher Breed requested the ROS in furtherance of securing a Cannabis Retailer License (CRL) from the State of New Jersey Cannabis Regulatory Commission (CRC) under the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56. We hold the City Council was required to provide a discernible basis for denying Higher Breed's ROS application, thereby informing the applicant and the public of its reasons, as well as affording meaningful appellate review.

On appeal, the City Council challenges two orders: an October 25, 2024 order denying defendant's motion to dismiss Higher Breed's complaint for failure to state a claim upon which relief can be granted; and a June 2, 2025 order granting Higher Breed summary judgment and requiring the City Council to issue the ROS. For the reasons that follow, we affirm in part, vacate in part, and remand the matter to the City Council for further proceedings consistent with this opinion.

2

I.

We summarize the largely undisputed facts and procedural history from the record. Higher Breed is a cannabis business seeking to operate a Class 5 cannabis retail establishment in the City of Burlington (Burlington). Higher Breed, which is owned by Jim Waltz and Karen Waltz, entered into a lease agreement for property on East Route 130 (the property) in Burlington. Stephen Bergenfeld owns the property, which is located in an HC-2 zoning business district permitting retail cannabis businesses.[1]

On December 21, 2023, Higher Breed filed an application with the City Council seeking a Class 5 cannabis retailer ROS. Higher Breed required the ROS to obtain a CRL from CRC for a Class 5 cannabis retail establishment in Burlington.

On March 19, 2024, the City Council heard Higher Breed's application (first meeting). Higher Breed presented testimony by Jim and Greg D'Agostino, a specialist from Tenax Strategies. D'Agostino provided a comprehensive presentation on Higher Breed's proposed cannabis retail business. He specifically addressed the City Council's concerns about Higher

---

[1] As Jim Waltz and Karen Waltz share the same surname, we use first names to avoid confusion. We intend no disrespect by this informality. Bergenfeld's name is also spelled in the record as "Bergenfield." We use the more frequently cited reference.

Breed's location, operations, customer flow, security, and community impact. At the conclusion of the presentation, and after D'Agostino responded to comprehensive questioning, the City Council unanimously voted in favor of moving the resolution forward. The City Council scheduled the ROS application for "a future meeting" to permit "additional discussion[]" and the public to address any concerns.

At the next meeting on April 16, 2024 (second meeting), the City Council addressed Higher Breed's ROS application "for consideration and [a] vote." At the start of the public comment section, Alan Sussman, a non-resident and real estate broker, addressed the City Council and expressed his dissatisfaction with Bergenfeld. Sussman believed he was owed a real estate commission for arranging the lease of the property to Higher Breed. In his remarks Sussman stated:

> I[ am] here regarding the [ROS] . . . for [Higher Breed] . . . to operate Class 5 cannabis at . . . [the property]. The . . . former site of the China Acupuncture massage parlor was recently closed down by law enforcement.
>
> I will tell you . . . my experience in dealing with these people, you can make your own decision on, . . . I guess they[ have] come in already and talked, but my experience is they were dishonest people, property owners.

Sussman asserted that Bergenfeld called him in July 2023, seeking assistance in "find[ing] a cannabis dispensary" to lease the property. Sussman relayed Tenax referred Jim and Karen regarding a potential lease. He alleged the following:

> The applicant[] [Jim] was denied . . . a Class 5 license on [a] property he owned in Red Bank, so he came to Burlington with his Class 5 license. [Jim] . . . signed a non-disclosure form with me, my company . . . . [I]t was for him to cease disclosures, unless it was authorized by my company, which he did not.

Sussman maintained that he introduced Bergenfeld to Jim. He further stated that:

> [Bergenfeld] . . . is an absentee owner. He had a massage parlor on his property for years, [which] finally closed down. Can you imagine what[ is] going to happen with a cannabis dispensary? He[ is] just not [an] accountable person.
>
>         . . . .
>
>         . . . The bottom line is they[ have] enrich[ed] themselves on my back. They are dishonest people.

In light of Sussman's statements, two residents in attendance thereafter urged the City Council to "table" the ROS application for further consideration and a later vote. The City Council unanimously voted to carry the ROS application until its next meeting on May 14, 2024 (third meeting).

5

On April 25, 2024, Jim sent a letter to the City Council responding to Sussman's comments made at the second meeting. Jim asserted that Sussman's comments were "inaccurate" and "misleading." He explained that when touring the property with Karen they "were under the impression that [Sussman] . . . was representing" Bergenfeld. Jim further stated that they "were asked to sign an agreement by . . . [Sussman]," which "[they] never requested or planned to engage in." He maintained Sussman was "unprofessional" and exhibited "ethically questionable behavior." Jim explained he subsequently "communicate[d] directly with" Bergenfeld.

At the third meeting, Sussman appeared and again recommended denying Higher Breed's ROS application, alleging he was owed a brokerage fee. He did not reference the broker's agreement with Higher Breed or other documents. He stated:

> In my experience, mine alone, my dealings with these people, they are dishonest, untrustworthy. Let . . . me be clear[,] . . . my experience is dealing with these people. I[ have] been in this business almost [forty] years and I[ have] never been blatantly screwed like I have here.
>
> . . . [W]e negotiated a deal for them to lease the whole property, which is 7,200 square feet of building for a 25 a foot plus, which is $180,000 a year for a 10[-]year period. Which -- plus 5 percent ownership.
>
> . . . The next day, the owner, Mr. Bergenfeld calls me, tells me his . . . lawyer said . . . he could[

A-3414-24

not] be in [an] ownership position. So[,] I negotiated another deal for him, which was the 25 per foot, which is $180,000 per year, plus 1 percent of . . . what[ is] called percentage []rent.

A dispensary probably will make about 15 million a year. So that[ is] another $150,000. So total yearly what[ is] coming in, just so you know, the numbers is $330,000 to Mr. Bergenfeld, net, as opposed to what he was getting prior with the pet store and the massage parlor . . . .

So if you take that $330,000 over [a] 10-year period, you[ are] talking about $3,300,000 of which he changed the agreement to say that yes, I produced the buyer, but . . . the commission was subject to a separate agreement, which I knew nothing about.

The next day, I get a call from his lawyer [stating], we[ are] not paying you[,] you[ are] out because -- and of course, they[ are] not going to sign a separate agreement. So[,] I put all this work into it. Bergenfeld . . . is . . . on a $3,300,000 per year lease. If you did a cap rate of 10 percent[,] I basically made his property worth $33[,000,000]. Okay? And for that, he [will not] pay $130,000 commission. These people are untrustworthy. Thank you.

After hearing Sussman, the City Council moved to vote on the ROS application without hearing from Higher Breed or seeking any further information. When the City Council's president opened the matter for the City Council's discussion, one of the members stated they opposed granting the ROS application because she was "offended" by the letter received from the "property owner." Another member remarked that the dispute between Higher Breed, Bergenfeld, and Sussman "[was] a matter . . . to be determined by the

7

courts" and not by the City Council, and two other members agreed. A third member stated, "My thoughts are I[ am] still opposed." No discussion directly addressing Sussman's remarks occurred. The City Council denied Higher Breed an ROS, voting three in favor and four against. The City Council's May 14, 2024 resolution provided no reasons for denying Higher Breed's ROS, but it included that "Councilwoman Woodard stated she is opposed" and "Councilwoman Bergner-Thompson stated she was offended by a letter from the property owner."

On June 13, 2024, Jim sent another letter to the City Council seeking reconsideration of the denial of Higher Breed's ROS application. Jim stated the following:

> We understand there have been concerns raised during previous City Council meetings, specifically comments made by the broker involved in our transaction, . . . Sussman. . . . Sussman had indicated that he had been excluded from the deal, and both . . . [Bergenfeld] and our entity, [Higher Breed] . . . , were portrayed as bad actors. We want to clarify that his characterization was a result of a misunderstanding regarding the initial agreement between the three parties.
>
> Since those public comments, we have worked diligently to address and reconcile the differences. We are pleased to inform you that a mutual understanding has been reached, and the business relationship between [Bergenfeld], . . . Sussman, and [Higher Breed] has been successfully codified.

8

The same day, the City Council's president emailed Higher Breed in response stating:

> Please be advised that the City [Council] will not be able to honor your request in this matter as [the] City Council has already rendered its decision. Pursuant to the recent Appellate Division decision in Big Smoke LLC v. Township of West Milford[, 478 N.J. Super. 203 (App. Div. 2024)], municipalities have wide discretion in deciding to grant, deny[,] or reconsider requests for [an ROS] for cannabis businesses.

On June 28, 2024, Higher Breed filed a complaint in lieu of prerogative writs against the City Council claiming the ROS should be issued because the denial was arbitrary, capricious, and unreasonable. In support of its position, Higher Breed asserted the subject property "was already determined by [the] City Council to be suitable for . . . the operations of a cannabis business," the City Council had already approved an ROS for a cannabis dispensary "next door to the [p]roperty," and the City Council failed to provide "a rational basis or reasoning of any kind for its failure to adopt" the ROS.

On September 13, 2024, the City Council filed a motion to dismiss Higher Breed's complaint for failure to state a claim under Rule 4:6-2(e). On October 25, 2024, a judge issued an order denying the City Council's motion. The judge determined Higher Breed sufficiently alleged that the City Council had acted arbitrarily, capriciously, or unreasonably in denying Higher Breed's ROS application. Thereafter, the City Council filed an answer.

On May 23, 2025, a different judge (second judge) presided over the action in lieu of prerogative writs hearing. On June 2, 2025, the second judge issued an order accompanied by a written decision entering judgment in favor of Higher Breed. The second judge determined the City Council's decision to deny Higher Breed an ROS was arbitrary, capricious, and unreasonable. He found that it was within the City Council's discretion to consider Sussman's comments, but Sussman's "comments alone were insufficient" to support the denial of Higher Breed's ROS application. The second judge reasoned that Sussman's comments were "non-substantive" and "were not about the [property's] suitability but rather a commercial dispute."

In considering the record, the second judge highlighted that "[t]he four members who voted against the ROS did not state a reason for their vote that was related to site suitability or not complying with Burlington City's local ordinances." The second judge also reasoned that "another cannabis applicant, Northern Alternatives, LLC" was issued an ROS at the third meeting and the application was similar to Higher Breed's application. Additionally, the City Council had approved an ROS for "a medical cannabis establishment for LIFE Compassion Center Dispensary, LLC" at the property in 2021. The second judge went on to explain that the record did not support the City Council's decision, noting it was not based on "any substantiated evidence."

10

After the City Council filed its appeal, it moved before the second judge for a stay. Higher Breed thereafter filed a cross-motion to enforce litigant's rights. On August 14, 2025, the second judge denied the City Council's motion for a stay and granted Higher Breed's motion, requiring the City Council to issue the ROS. On August 25, 2025, the City Council issued Higher Breed the ROS. There is no indication in the record that the CRC issued Higher Breed the CRL.

On appeal, the City Council contends the first judge erred in failing to dismiss respondent's complaint for failure to state a claim upon which relief can be granted and the second judge erred in determining the denial of Higher Breed's ROS application was arbitrary, capricious, or unreasonable.

II.

We apply a deferential standard of review to a governing body's decision. See Riese-St. Gerard Hous. Corp. v. Paterson, 249 N.J. Super. 205, 215 (App. Div. 1991) (recognizing that we "accord the action of a governing body . . . the presumption of validity and to defer to its judgment"); see also Big Smoke LLC, 478 N.J. Super. at 217. Nevertheless, "[m]unicipal action will be overturned by a court if it is arbitrary, capricious[,] or unreasonable." Bryant v. City of Atlantic City, 309 N.J. Super. 596, 610 (App. Div. 1998).

11

Questions of statutory interpretation are reviewed de novo. States Newsroom Inc. v. City of Jersey City, 261 N.J. 392, 407 (2025). We "ascribe[] to the statutory words their ordinary meaning and significance and read[] them in context with related provisions so as to give sense to the legislation as a whole." W.S. v. Hildreth, 252 N.J. 506, 515 (2023) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "In construing a statute, our 'overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" Doe v. Est. of C.V.O., 477 N.J. Super. 42, 55 (App. Div. 2023) (quoting Bermudez v. Kessler Inst. for Rehab., 439 N.J. Super. 45, 50 (App. Div. 2015)). "When two or more statutory schemes are analyzed, they 'should be read in pari materia and construed together as a unitary and harmonious whole.'" Liberty Ins. Corp. v. Techdan, LLC, 253 N.J. 87, 103-04 (2023) (quoting State v. Nance, 228 N.J. 378, 395 (2017)); see also William M. Cox et al., New Jersey Zoning and Land Use Administration § 43-1 at 629 (2025) (recognizing CREAMMA as a statutory scheme "which in one way or another affect[s] or impinge[s] upon land development").

The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, "allows municipalities to adopt ordinances to regulate land development 'in a manner which will promote the public health, safety, morals, and general welfare' using uniform and efficient procedures." Dunbar Homes, Inc. v.

Zoning Bd. of Adjustment of Franklin, 233 N.J. 546, 560 (2018) (quoting Rumson Ests., Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 349 (2003)); see also Paruszewski v. Township of Elsinboro, 154 N.J. 45, 53 (1998). "To accomplish that goal, the MLUL delegates power to three municipal agencies—the governing body, the planning board, and the zoning board of adjustment . . . that work to develop, enforce, and grant relief from the municipality zoning scheme." Paruszewski, 154 N.J. at 53 (citation omitted); see also Cox et al., § 1-2.

On February 22, 2021, the Legislature enacted CREAMMA, legalizing the cultivation, manufacture, sale, and possession of cannabis in New Jersey, and establishing a framework for the operation and licensing of cannabis industry businesses. CREAMMA provides the CRC with the authority to promulgate regulations in furtherance of the legislative scheme. N.J.S.A. 24:6I-34(b)(4). The CRC is responsible, in pertinent part:

> (1) To regulate the purchase, sale, cultivation, production, manufacturing, transportation, and delivery of cannabis or cannabis items . . . ;
>
> (2) To grant, refuse, suspend, revoke, cancel, or take actions otherwise limiting licenses or conditional licenses for the sale . . . of cannabis items, or other licenses in regard to cannabis items, and to permit, in the [CRC]'s discretion, the transfer of a license between persons.
>
> [N.J.S.A. 24:6I-34(b)(1) to (2).]

13

The CRC's regulations provide structure and control over cannabis businesses within New Jersey. N.J.S.A. 24:6I-35. CREAMMA also authorizes municipalities to enact ordinances addressing the numerical limit of cannabis businesses permitted and their "location, manner, and times of operation." N.J.S.A. 24:6I-45; see also N.J.A.C. 17:30-5.1. A CRL applicant must comply with a municipality's enacted "ordinances or regulations" governing the location of a cannabis retailer's establishment. N.J.S.A. 24:6I-45. "If the [CRL] application is denied, the [CRC] shall notify the applicant in writing of the specific reason for its denial[] and provide the applicant with the opportunity for a hearing in accordance with the 'Administrative Procedure Act,'" N.J.S.A. 51:14B-1 to -15. N.J.S.A. 24:6I-36(b)(1)(C)(iii) (emphasis added).

CREAMMA specifically directs that a business intending to sell cannabis from a retail establishment must obtain "a Class 5 [CRL]" from the CRC to operate a retail premise. N.J.S.A. 24:6I-42. The CRC has issued regulations identifying the proofs a prospective business must submit in its application, including zoning approvals and "[p]roof of local support." N.J.A.C. 17:30-7.10(b).

The CRC requires "[p]roof of local support, which shall be demonstrated by resolution adopted by the municipality's governing body, or where the

14

municipality has no governing body, a written letter of support from the municipality's executive." N.J.A.C. 17:30-7.10(b)(9). "'[P]roof of local support' [is] embodied in a municipal governing body's resolution." Big Smoke LLC, 478 N.J. Super. at 219 (citing N.J.A.C. 17:30-7.10(b)(9)).

A "resolution" is defined as "any act or regulation of the governing body of any municipality required to be reduced to writing, but which may be finally passed at the meeting at which it is introduced." In re Ordinance 04-75, 192 N.J. 446, 460 n. 9 (2007) (quoting N.J.S.A. 40:49-1). "A municipality may enact ordinances or regulations" that do not conflict with CREAMMA. N.J.S.A. 24:6I-45; see also Botteon v. Borough of Highland Park, 478 N.J. Super. 452, 458 (App. Div. 2024). N.J.S.A. 24:6I-45(c)(2) provides that "[a] municipality may impose a separate local licensing or endorsement requirement as a part of its restrictions on the number of cannabis establishments."

## III.

The City Council contends reversal is warranted because the second judge erroneously determined its denial of Higher Breed's ROS application was arbitrary, capricious, and unreasonable. The City Council claims it properly exercised its discretion in denying Higher Breed's ROS application and it was not required to provide a reason for the denial. Its argument is

based on the assertion that Higher Breed had no right to obtain an ROS and the City Council's authority to grant or deny an ROS is absolute. For the reasons that follow, we hold the City Council was required to provide a discernible basis for denying Higher Breed's ROS application to inform the applicant and the public of its reasons, as well as afford meaningful appellate review.

We begin by reviewing CREAMMA's regulatory framework, N.J.A.C. 17:30-1.1 to -8.3, and Burlington's ordinance requirements. CREAMMA directs that "the [CRC] shall notify the applicant in writing of the specific reason for its denial[] and provide the applicant with the opportunity for a hearing in accordance with the 'Administrative Procedure Act,'" N.J.S.A. 51:14B-1 to -15. N.J.S.A. 24:6I-36(b)(1)(C)(iii). The CRC's regulations require "[p]roof of local support" from a municipality's governing body or its chief executive. N.J.A.C. 17:30-7.10(b)(9).

In pursuing CRC approval to operate a Class 5 cannabis retail establishment in Burlington, Higher Breed sought proof of local support for its cannabis business in accordance with N.J.A.C. 17:30-7.10(b)(9) by seeking a "resolution adopted by the municipality's governing body." Higher Breed filed a request for an ROS under Burlington's Zoning Code, Article VII, which required the submission of an application for "municipal support" and payment of a "fee[ of] $500." Burlington City, N.J., Code § 207.71(p)(6)(F)(iii). After

16

Higher Breed paid the $500 application fee and presented its application, which included the testimony of witnesses and submitted documentation, the City Council unanimously voted to "move to [a] resolution" on issuing the ROS. Burlington's Code defines a "resolution" as "[a]n action of the [City Council] expressing the sense or will of the [City] Council on a matter of special or temporary interest which shall be written and may be adopted at the meeting at which it is introduced without publication or public hearing." Burlington City, N.J., Code § 1-15. The City Council relisted Higher Breed's application "for additional discussions[,] an update on the plans," and to "give the public opportunity to engage and have more questions."

During the second meeting, after hearing Sussman's comments related to an allegedly unpaid brokerage fee due from Bergenfeld, the City Council postponed the vote on Higher Breed's ROS and relisted the application. Thereafter, Jim sent a letter to the City Council offering to "address any questions the [City C]ouncil may have about [Higher Breed's] agreement with the landlord or questions about [Higher Breed] and the professional standards by which [he and Karen] hold [them]selves and [their] representatives [to]." The City Council apparently never acknowledged or responded to Jim's letter and did not seek further information. At the third meeting, prior to the City Council's vote to deny the ROS, a Council member stated, "I just want to say

17                                                                              A-3414-24

that the letter that we received from the property owner, . . . I was offended."
It is unclear what letter the Council member was referencing as Bergenfeld
owned the property and not Jim. If the Council member was referencing Jim's
letter, as recognized by the second judge, it "is unclear what [wa]s offensive."
At the third meeting and in its resolution, the City Council recited no reason
for denying the ROS.

We now turn to address the City Council's argument that its denial of
Higher Breed's ROS was not arbitrary, capricious, or unreasonable because it
was authorized to consider any relevant information in deciding the ROS
application, had complete discretion to deny the application, and was not
"required to put [its] specific reasoning for its decision on the record." We
agree the City Council was permitted to consider relevant information,
including Sussman's comments. See N.J.S.A. 40:48-2 (granting general police
power to municipalities "for the preservation of the public health, safety[,] and
welfare of the municipality and its inhabitants"). We also agree that the City
Council had the authority to reasonably grant or deny an ROS application. See
Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965) (explaining that "the
law presumes that . . . municipal governing bodies will act fairly and with
proper motives and for valid reasons"). Indeed, "public bodies, because of

18

their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion." Ibid.

We disagree, however, with the City Council's contention that it is not required to give a reason for denying an ROS. A plain reading of N.J.A.C. 17:30-7.10(b)(9) offers no exemption for municipalities from providing in an adopted resolution the basis for denying local support. Relevantly, in the present case, the City Council's ordinance defining a resolution provided for a written description of "the sense or will of the [City] Council." Burlington City, N.J., Code § 1-15. Moreover, we are convinced that requiring the City Council's resolution to articulate a reason for its decision on an ROS is consistent with CREAMMA's framework, which requires the CRC to provide reasons for a denial. See N.J.S.A. 24:6I-36(b)(1)(C)(iii).

The City Council's failure to provide a reason for denying Higher Breed's ROS application prevents the applicant and public from understanding its action, and meaningful appellate review. We have held that a municipality's discretionary determination shall be "vested with a presumption of validity[] that will be upheld where any state of facts may reasonably be conceived to justify the action." Vineland Constr. Co. v. Township of Pennsauken, 395 N.J. Super. 230, 255 (App. Div. 2007) (citing Quick Chek Food Stores v. Township of Springfield, 83 N.J. 438,447 (1980)). Stated

another way, for the City Council's resolution to be accorded deference, there must be a clearly discernible basis provided to support its decision.

Additionally, a governing body has the responsibility to set forth findings of facts in its decision to facilitate meaningful review. Cf. In re Application for Med. Marijuana Alt. Treatment Ctr. for Pangea Health and Wellness, LLC, 465 N.J. Super. 343, 375 (App. Div. 2020) (providing that "an administrative agency acting quasi-judicially must set forth basic findings of fact, supported by the evidence and supporting" its determination "for the salutary purpose of informing the interested parties and . . . any reviewing tribunal of the basis on which the final decision was reached so that it may be readily determined whether the result is sufficiently and soundly grounded" or is arbitrary, capricious, or unreasonable). Despite the lack of statutory directive, "[t]he requirement of findings is far from a technicality and is a matter of substance." In re Orban/Square Props., LLC, 461 N.J. Super. 57, 75 (App. Div. 2019) (quoting N.J. Bell Tel. Co. v. Commc'n Workers of Am., 5 N.J. 354, 375 (1950)); see In re Orban/Square Props., LLC, 461 N.J. Super. at 77 (declining to accord deference "unless we have 'confidence that there . . . [are] appropriate findings addressing the critical issues in dispute.'" (quoting Bailey v. Bd. of Review, 339 N.J. Super. 29, 33 (App. Div. 2001))).

As correctly noted by the second judge, the City Council members failed to "explain[] why they were against the ROS," "deliberate[ on] the matter," and reference "evidence to support [the] denial of [Higher Breed]'s ROS." Further, as acknowledged in the City Council's merits brief, municipalities are required to provide an ROS application with fair and "due consideration" in reaching a decision. Simply stated, the City Council's deliberations and resolution provided no material explanation for denying Higher Breed's ROS application. Thus, while the City Council was permitted to consider all relevant evidence and has wide discretion under its general police powers to deny the issuance of an ROS, we hold that the City Council has to provide a discernible reason for its determination.

While we agree the City Council failed to provide sufficient reasons, we part ways with the second judge's decision that issuance of the ROS was mandated. CREAMMA's statutory framework is still new. We recently recognized that there is limited "published decisional law" addressing what constitutes appropriate "municipal discretion to issue or withhold 'local support' for a CRL applicant" and sufficient reasons for a governing body's denial of an ROS application. See Big Smoke LLC, 478 N.J. Super. at 219. Therefore, we conclude a remand is necessary for the City Council to address

21

relevant concerns, including Higher Breed's interaction with Sussman, and for the issuance of a new resolution providing the basis for its decision.

It is well-established that appellate courts may remand a matter to a governing body "in fairness to the applicant and in the interest of providing helpful aid for a court which may be called upon to review the determination," for further proceedings to develop a record, and to provide "a statement of reasons." Reinauer Realty Corp. v. Borough of Paramus, 34 N.J. 406, 419 (1961); see Smith v. Fair Haven Zoning Bd. of Adjustment, 335 N.J. Super. 111, 123 (App. Div. 2000) (remanding because "the resolution adopted by the Zoning Board [was] woefully inadequate"); see also New N.Y. SMSA, Ltd. P'ship v. Bd. of Adjustment of Weehawken, 370 N.J. Super. 319, 335 (App. Div. 2004) (remanding to a board of adjustment to make factual findings because of "the legal insufficiency of the resolution"). It bears noting, we are mindful that a governing body's decision on the issuance of an ROS will generally not require the same level of detail that a land use board's resolution typically requires. See, e.g., N.J.S.A. 40:55D-10(g) (requiring land use boards to "include findings of fact and conclusions based thereon in each decision on any application"); cf. In re Team Acad. Charter Sch., 459 N.J. Super. 111, 140 (App. Div. 2019) ("The applicable arbitrary, capricious, or unreasonable standard . . . demands only 'that the reasons for the decision be discernible.").

In sum, the City Council on remand is directed to give further consideration to Higher Breed's application and sufficient reasons for its decision regarding Higher Breed's ROS. We express no opinion on the outcome of this matter. To the extent that we have not addressed the City Council's remaining contentions, including the argument that the first judge erred in not granting the motion to dismiss, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division